# BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

**IN RE: Glucagon-like Peptide-1**
**Receptor Agonists (GLP-1 RAs)**
**Non-Arteritic Anterior Ischemic**
**Optic Neuropathy**
**Products Liability Litigation**

**MDL DOCKET NO. 3163**

## MEMORANDUM IN OPPOSITION TO ELI LILLY AND COMPANY'S
## MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

BACKGROUND ........................................................................................................ 2

ARGUMENT ............................................................................................................. 5

   I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED IN THE DISTRICT OF
NEW JERSEY BEFORE JUDGE QURAISHI ........................................................... 5

   II.   THE RELATED ACTIONS SHOULD NOT BE CONSOLIDATED INTO MDL
NO. 3094 ................................................................................................................. 12

     a.    The Differences Between NAION GLP-1 RA Claims and Gastrointestinal GLP-1 RA
Claims Are Significant ........................................................................................... 12

     b.    Consolidation Into MDL No. 3094 Would Unnecessarily Complicate The MDL and
Unnecessarily Delay NAION Plaintiffs' Cases ..................................................... 15

CONCLUSION ........................................................................................................ 19

**INTRODUCTION**

GLP-1 receptor agonists ("GLP-1 RAs") bear an unwarned risk of Non-Arteritic Ischemic Optic Neuropathy ("NAION"), a condition that causes blindness and vision loss. There is no treatment or cure for the vision loss caused by NAION, and in some sufferers, vision loss worsens over time. Although NAION is generally rare, the total number of cases is increasing due to the relentless and overwhelming promotion of GLP-1 RAs by the world's biggest pharmaceutical companies and their cut-outs, introducing these drugs into the bodies of millions and millions of Americans. To date, almost all federal litigation relating to these injuries concerns Novo Nordisk ("Novo") products,[1] and has progressed rapidly in the District of New Jersey, before Judge Zahid N. Quraishi.

On August 19, 2025, Eli Lilly and Company ("Lilly"), a Defendant in one Federal NAION case, which has not advanced beyond the point of filing, petitioned the Judicial Panel on Multidistrict Litigation to transfer the District of New Jersey and Northern District of Texas cases[2] (in which Lilly is not a party) to an existing Multidistrict Litigation dealing with unrelated non-vision injuries, MDL No. 3094.

Although consolidation of the NAION cases is appropriate due to their common issues of fact, consolidation of the NAION cases into MDL No. 3094 would harm efficiency, not enhance it. At bottom, Lilly argues that dozens of filed Plaintiffs suffering from vision loss (and hundreds or thousands of Plaintiffs whose claims are not yet filed) should be denied the opportunity to

---

[1] Because their claims are against Novo, not Lilly, Plaintiffs in the Related Actions respectfully seek leave to file a reply to any response filed by Novo Nordisk.

[2] Although the complaint in the single Northern District of Texas case alleges blindness, it does not allege that plaintiff suffered from NAION, the injury at issue in the Related Actions. *Golmon v. Novo Nordisk Inc.*, 3:24-cv-02368, Dkt. 38 (Apr. 14, 2025).

advance their claims and instead get in line behind thousands of Plaintiffs pursuing gastrointestinal claims that involve fundamentally different core allegations and evidence.

Pursuant to 28 U.S.C. § 1407 and JPML Rule 6.2, Plaintiffs Cynthia Kane et al.[3] respectfully request that the Panel centralize all currently filed cases identified in Appendix A (the "Related Actions"), as well as any other or subsequently filed cases involving common factual issues, in the District of New Jersey before Judge Zahid N. Quraishi. As discussed below, the NAION cases warrant the creation of a separate MDL. The most appropriate district for that transfer is the District of New Jersey. It has by far the greatest and most advanced number of cases, is the district where a substantial amount of relevant documents and witnesses are located, and is already the forum in which Plaintiffs are coordinating with a growing New Jersey state court litigation.[4] Judge Quaraishi is also an exceptionally qualified judge for this litigation.

## **BACKGROUND**

Plaintiffs in each of the Related Actions share common set of allegations: That Defendants[5] did not warn of or downplayed the risk of NAION associated with the use of Defendants' GLP-1RA drugs, which caused Plaintiff's injuries.

Since the publication of the Hathaway et al. paper in JAMA last August[6] finding a 660%

---

[3] This opposition is brought on behalf of Plaintiffs in the cases identified in Appendix A, Schedule of Actions.

[4] *See* Appendix B (list of currently filed cases in New Jersey state court).

[5] As indicated elsewhere, Lilly is a defendant in only one Federal NAION case, which is pending in the Eastern District of Pennsylvania. The eighteen cases pending in the District of New Jersey, as well as the other cases pending in the Eastern District of Pennsylvania and the Northern District of Texas, are all solely against Novo.

[6] *See* JT Hathaway, et al., *Risk of Nonarteritic Anterior Ischemic Optic Neuropathy in Patients Prescribed Semaglutide*, JAMA Ophthalmol., 142(8):732-739, dated Aug. 1, 2024, https://jamanetwork.com/journals/ jamaophthalmology/fullarticle/2820255.

increased risk of NAION with semaglutide, several other authors have explored the relationship between GLP-1 RA drugs and NAION.[7] These published reports and studies include epidemiological studies across tens of thousands of patients showing strong evidence of increased risk of NAION among GLP-1 RA users, as well as case reports of patients who developed NAION while using a GLP-1 RA drug whose condition improved when the drugs were withdrawn, and declined when the drugs were re-introduced – which provide further substantial evidence of a causal association.[8] On June 27, 2025, the World Health Organization issued a safety alert to health-care professionals and regulatory authorities about the risk of NAION associated with the use of semaglutide medicines, in light of "the widespread global use of semaglutide and the serious nature of NAION."[9] The European Medicines Agency has also recommended updating the product information for semaglutide medicines to include the risk of NAION.[10] Defendants' GLP-1 RA labels, however, contain no warning for NAION.

For some GLP-1 RA users, such as Plaintiff Cynthia Kane, NAION leads to permanent loss of vision in both eyes.[11] Ms. Kane can no longer read, write or drive. She has needed

---

[7] Hsu et al. (2025) *Semaglutide and Nonarteritic Anterior Ischemic Optic Neuropathy Risk Among Patients With Diabetes*; Grauslund et al. (2024) *Once-weekly semaglutide doubles the five-year risk of nonarteritic anterior ischemic optic neuropathy in a Danish cohort of 424,152 persons with type 2 diabetes;* Simonsen et al. (2025), *Use of semaglutide and risk of non-arteritic anterior ischemic optic neuropathy: A Danish-Norwegian cohort study;* Cai et al. (2025), *Semaglutide and Nonarteritic Anterior Ischemic Optic Neuropathy;* Katz et al. (2025), *Ophthalmic Complications Associated With the Antidiabetic Drugs Semaglutide and Tirzepatide;* Lindsey et al. (2025), *Semaglutide or Tirzepatide and Optic Nerve and Visual Pathway Disorders in Type 2 Diabetes.*
[8] *See* Katz et al. at 4.
[9] *See* World Health Organization Medical Product Alert, June 27, 2025, *available at* https://www.who.int/news/item/27-06-2025-27-06-2025-semaglutide-medicines-naion.
[10] *See* European Medicines Agency News Announcement, June 6, 2025, *available at* https://www.ema.europa.eu/en/news/prac-concludes-eye-condition-naion-very-rare-side-effect-semaglutide-medicines-ozempic-rybelsus-wegovy
[11] *Kane v. Novo Nordisk*, Case No. 3:24-cv-11384-ZNQ-RLS, Dkt. 1, ¶ 28.

occupational therapy to re-learn how to navigate her home and now requires a caregiver to assist her with the daily activities of life.[12] Other Plaintiffs now struggle to walk up and down stairs, have had to abandon careers due to their inability to read computer screens, or need to rely on friends or paid services for travel outside the home.[13]

Since December 2024, Ms. Kane's claims and those of other Plaintiffs in the Related Actions pending in the District of New Jersey have been moving forward in an efficient and coordinated fashion. The Parties in those cases have engaged in 26(f) conferences, stipulated to several preliminary discovery orders, negotiated the scope of initial productions and a process for identifying relevant adverse events, and in several cases have exchanged pre-motion letters in connection with anticipated motions to dismiss. Novo's motion to dismiss in *Kane* is fully briefed.

Although the GLP-1 RAs[14] at issue in the Related Actions are the same drugs as those at issue in MDL No. 3094, the similarities between the litigations end there. The core allegations in the Related Actions are common, in that they center on Defendants' awareness of the risk of NAION, and Defendants' failure to warn the public and physicians of the risk of NAION due to their GLP-1 RAs. Those allegations have no overlap with the core allegations in MDL No. 3094, which relate to Defendants' awareness of the risks of gastrointestinal injuries (including gastroparesis, ileus, bowel obstruction, gallbladder, and others), and the presence or absence of warnings relating to *those* injuries. The warranty, fraud, and misrepresentation, and negligent

---

[12] *Id.* at ¶ 29.

[13] *See*, *e.g.*, *Pennell v. Novo Nordisk*, Case No. 2:25-cv-02756-ZNQ-RLS, Dkt. 10 at 1.

[14] Ozempic, Wegovy, Mounjarou, Saxenda, Trulicity, and Zepbound are considered part of the same class of drugs, meaning they share the same physiologic effect, chemical structure or mechanism of action. https://www.fda.gov/industry/structured-product-labeling-resources/pharmacologic-class (last visited Aug. 13, 2025); https://www.fda.gov/media/177252/download (last visited Aug. 13, 2025).

undertaking claims asserted in the Related Actions will focus on Defendants' representations and omissions relating to NAION, which are distinct from the representations and omissions relevant to the gastrointestinal injuries in MDL No. 3094. The Related Actions will all involve the same scientific analysis on causation of NAION, but that analysis will involve entirely different organ systems and mechanisms of causation[15] than the scientific analysis required for resolution of the gastrointestinal injury claims in MDL No. 3094. Indeed, while the Related Actions will likely all involve the same epidemiological evidence and adverse event reports relating to NAION, that evidence has no foreseeable overlap with the gastrointestinal epidemiology and gastrointestinal adverse events relevant in MDL No. 3094.

## ARGUMENT

### I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED IN THE DISTRICT OF NEW JERSEY BEFORE JUDGE QURAISHI

The District of New Jersey is the most appropriate forum for consolidation of the Related Actions, and Plaintiffs request that the Panel transfer and consolidate the Related Actions before Judge Zahid N. Quraishi.

As discussed above, the Related Actions involve a variety of common questions of fact, including: whether Defendants knew that their GLP-1RA drugs could cause NAION, including permanent vision loss; whether Defendants failed to warn prescribing physicians and users of the risk of NAION posed by their GLP-1RA drugs; whether Defendants' marketing and promotion of their GLP-1RA drugs downplayed the risks of NAION; whether compliance with federal law

---

[15]  *See* JT Hathaway et al., Aug. 1, 2024, https://jamanetwork.com/journals/jamaophthalmology/fullarticle/2820255, at 737-738 ("Despite evidence of neuroprotective properties, expression of the GLP_1 receptor in the human optic nerve and GLP-1 RA-induced enhanced sympathetic nervous system activity might influence optic nerve head perfusion and potentially increase the risk of NAION.").

hindered Defendants' ability to comply with its state-law tort duties; whether Defendants' misrepresentations to prescribing physicians and users caused Plaintiffs to suffer harm; whether Defendants' GLP-1RA drugs were defective as designed; and whether Defendants knew about such defects. The cases will also require common expert testimony, making it likely that numerous Rule 702 motions will be filed. Separate rulings on Daubert motions by judges in multiple district courts would create the potential for conflicting decisions and would not be an efficient use of judicial resources. Indeed, prior to Lilly's petition, Novo had already proposed holding a Science Day for the Related Actions pending in the District of New Jersey, to which Plaintiff did not object, as these issues are distinct from the gastrointestinal science day previously held in MDL No. 3094.

The selection of an appropriate forum for transfer and consolidation involves a balancing test of several factors, including (1) the location of the parties, witnesses, and documents; (2) the accessibility of the proposed transferee district to parties and witnesses; and (3) the respective caseloads of the proposed transferee district courts, *In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 931-32 (J.P.M.L. 1980), as well as "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." David F. Herr, *Annotated Manual for Complex Litigation, Fourth* § 20.131, at 239 (rev. ed. 2022); *see also In re Regents of Univ. of Cal.*, 964 F.2d 1128, 1136 (Fed. Cir. 1992); *see also* Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 214 (1977). "'The basic purpose of assigning (multiple litigation) to a single judge is to provide for uninterrupted judicial supervision and careful, consistent planning and conduct of pretrial and trial proceedings' that will eliminate or reduce conflict and duplication of effort." *In re Multidistrict Private Civil Treble Damage Litig. Involving Library Editions of Children's Books*,

297 F. Supp. 385, 386 (J.P.M.L. 1968) (quoting *Manual for Complex and Multidistrict Litigation* at 10 (1968)). These factors all point to the District of New Jersey as the appropriate forum for consolidation.

*First*, the District of New Jersey is home to Novo's US headquarters, where custodians with information directly relating to the claims at issue in this litigation and documents are located. Plaintiffs understand that almost half of the 23 custodians identified in Novo's Rule 26 Initial Disclosures in *Kane* are located in within the District of New Jersey.[16] Moreover, the District of New Jersey has the resources to oversee these cases ably and efficiently. The District of New Jersey has extensive experience handling MDL cases,[17] including efficiently handling MDLs involving permanent vision injuries.[18] Indeed, in *In re Elmiron Prods. Liab. Litig.*, MDL No. 2973, which involved claims of vision loss caused by drugs, the first Bellwether trial was resolved within 25 months of MDL assignment, paving the way for broader resolution. The District of New Jersey is also convenient and accessible. Trenton is accessible via rail transportation, is a short driving distance from New York City, and is a "geographically central forum for this nationwide litigation." *In re Xarelto*, 65 F. Supp. 3d at 1405. Newark Liberty International Airport, John F. Kennedy International Airport, and LaGuardia Airport are all within 85 miles of Trenton. Newark International Airport, the closest large airport, offers service to hundreds of domestic locations. Trenton is accessible via rail through Amtrak, New Jersey Transit, and SEPTA railroads. The rail

---

[16] *See* Exhibit A (*Kane v. Novo Nordisk, et al.* 24-cv-11384, Initial Disclosures, June 18, 2025).
[17] *In re Proton Pump Inhibitor*, 261 F. Supp. 3d 1351 (J.P.M.L. 2017); *In re FieldTurf Artificial Turf Marketing and Sales Practice Litig.*, 254 F.Supp.3d 1379 (J.P.M.L. 2017); *In re Invokana (Canagliflozin) Prods. Liab. Litig.*, 223 F.Supp.3d 1345 (J.P.M.L. 2016); *In re Allergen BIOCELL Textured Breast Implant Prods. Liab. Litig.*, 412 F.Supp.3d 1361 (J.P.M.L. 2019).
[18] *See, e.g.*, *In re Elmiron Prods. Liab. Litig.*, MDL No. 2973.

options include daily trains from New York, Philadelphia, and Washington D.C., including 131

Northeast Corridor Line trains between New York Penn Station and the Trenton Transit Center on

weekdays.

*Second*, Plaintiffs in the District of New Jersey, per Novo's request, and as discussed at a

case management conference with Magistrate Judge Rukhsanah L. Singh, have been successfully

coordinating with New Jersey State Court litigants on a variety of issues. The bulk of the New

Jersey State Court NAION actions are filed in Middlesex County, New Jersey,[19] about a 45-minute

drive from Trenton. Federal and State Court Plaintiffs in New Jersey coordinated and reached

agreement among themselves and Defendants on the Preservation Order and Rule 502(d) Order

entered in *Kane*. Plaintiffs in the Related Actions in the District of New Jersey and New Jersey

State Court Plaintiffs have also coordinated to present unified positions to Defendants on orders

governing (1) production of electronically stored information, (2) asserting and challenging

privilege claims, (3) asserting and challenging confidentiality claims, and (4) procedures for

sealing confidential documents submitted to the Court. Centralization in the District of New Jersey

will further foster the coordination of the federal litigation with the pending and growing state

proceedings in New Jersey State Court, which currently include 32 cases.[20]

*Third*, the vast majority of NAION GLP-1 RA cases in Federal Court are pending in the

---

[19] *See* Request for Multicounty Designation of NAION Ozempic/Wegovy Litigation, June 12, 2025, *available at* https://www.njcourts.gov/sites/default/files/mcl/ozempic-wegovy/application-naion-ozempic-wegovy-litigation.pdf (last accessed Sept. 12, 2025).
[20] *See*, *e.g.*, *In re Covidien Hernia Mesh Prods. Liab. Litig.*, 607 F.Supp.3d 1356, 1358 (J.P.M.L. 2022) (centralization in the District of Massachusetts will facilitate federal-state coordination with the more than 4,700 cases pending in Massachusetts state court coordinated proceeding); *In re: Incretin Mimetics Prods. Liab. Litig.*, 968 F. Supp. 2d 1345, 1347 (J.P.M.L. 2013) ("centralization in [the Southern District of California] will foster the coordination of this federal court litigation with the pending state court coordinated proceedings in California state court").

District of New Jersey: Eighteen, all pending before Judge Zahid N. Quraishi.[21] The Eastern District of Pennsylvania is in a distant second place, with only two cases.[22] This factor weighs strongly in favor of consolidation in the District of New Jersey.[23]

*Fourth,* the most advanced NAION GLP-1 RA cases are pending before Judge Quraishi in New Jersey. Judge Quraishi and counsel for Plaintiffs and Defendants have been diligently advancing Plaintiff Cynthia Kane's GLP-1RA NAION case in the District of New Jersey for nine months. On April 25, 2025, Defendants filed a Motion to Dismiss in *Kane*, pursuant to Fed. R. Civ. P. 12(b)(6) and for a more definite statement pursuant to Fed. R. Civ. P. 12(e). Plaintiff filed her Opposition to Defendants' Motion to Dismiss on May 9, 2025. Defendants filed their Reply in Support of the Motion to Dismiss on May 19, 2025. The Parties in *Kane* conducted extensive Rule 26(f) discussions, and submitted a Joint Rule 26(f) Report on June 16, 2025, including several agreed case deadlines, and exchanged initial disclosures on June 18, 2025. The Parties in *Kane* also negotiated and entered the Rule 502(d) and Preservation Orders described above, and have continued to negotiate other first-day orders in coordination across the Related Actions pending in the District of New Jersey and with New Jersey State Court Plaintiffs. The Parties in the Related Actions pending in the District of New Jersey have also negotiated a set of MedDRA terms (the

---

[21] *See* Appendix A, Schedule of Actions.
[22] Lilly's statement in its petition that *Garcia v. Eli Lilly & Co.*, No. 2:25-cv-04537 (Marston, J.) should be considered a NAION case is incorrect. Lilly's position appears to have been based on a single instance of the word "NAION" appearing in a 63-page complaint that alleges solely gastrointestinal injuries, and contains no suggestion that plaintiff suffered a vision injury. *Garcia v. Eli Lilly & Co.*, No. 2:25-cv-04537, Dkt. 1 (Aug. 11, 2025) at 9. Indeed, the amended complaint in *Garcia*, a gastroparesis case, removed the plainly erroneous reference to NAION. *Garcia*, No. 2:25-cv-04537, Dkt. 3.
[23] One case alleging NAION injuries in Indiana State Court was erroneously removed to Federal Court by Lilly earlier this week. Lilly has acknowledged the error and has promptly sought remand. *See McCoy v. Eli Lilly*, Case No. 1:25-cv-1789 (S.D. Ind.) Dkt. 7.

highly specific standardized medical terminology used to identify adverse event reports) for identification of responsive adverse events in Novo's safety tracking systems. At the initial case management conference in *Kane*, the Parties discussed the need to coordinate motion-to-dismiss practice across the Related Actions pending in the District of New Jersey, and holding a Science Day on issues relating to GLP-1 RAs and NAION. Beyond *Kane*, briefing has also proceeded in the other Related Actions pending before Judge Quraishi, including the exchange of pre-motion letters relating to proposed motions to dismiss in *Pennell*, *Osterman*, *Shea*, and *Malvesti*.[24] Judge Quraishi's management of the Related Actions pending before him has been effective and efficient in moving the five first-filed cases forward.

Within the District of New Jersey, Plaintiffs request that the Panel appoint Judge Zahid Quraishi to oversee these cases. Appointed to his commission in 2021, Judge Quraishi is the nation's first Muslim-American Article III judge, as well as the first Asian-American federal judge in New Jersey.[25] In addition to over a decade of experience in private practice and judicial office, Judge Quraishi served in the United States Army Judge Advocate General's Corps from 2003-2007 before being honorably discharged at the rank of captain. He deployed twice to Iraq in support of Operation Iraqi Freedom and was awarded numerous decorations including the Bronze Star and

---

[24] *Shea v. Novo Nordisk*, Case No. 3:25-cv-08033-ZNQ-RLS, Dkt. Nos. 9 & 10; *Pennell v. Novo Nordisk*, Case No. 2:25-cv-02756-ZNQ-RLS, Dkt. Nos. 9 &10; *Osterman v. Novo Nordisk*, Case No. 3:25-cv-03500, Dkt. Nos. 9 & 10; *Malvesti v. Novo Nordisk,* Case No. 3:25-cv-08018-ZNQ-RLS, Dkt. Nos. 10 & 11.

[25] *Senate confirms 1st Muslim American federal judge in US history,* ABC News (June 10, 2021) https://abcnews.go.com/Politics/senate-confirms-1st-muslim-american-federal-judge-us/story?id=78206834 (last accessed Sept. 9, 2025).

Combat Action Badge.[26] After completing his military service, Judge Quraishi also served as Assistant United States Attorney for the District of New Jersey.

In February 2025, Judge Quraishi was selected to preside over *In re Avycaz (Ceftazidime and Avibactam) Patent Litigation*, MDL No. 3134. Judge Quraishi has efficiently advanced that consolidated litigation, including setting a discovery deadline for December 2025 and trial dates for June 2026. *See In re Avycaz*, 3:25-md-003134-ZNQ-TJB, Dkt. 27 (Aug. 26, 2025). Consolidating the Related Actions before Judge Quraishi represents a good opportunity to give a significant mass tort to a relatively new MDL Judge who has relevant litigation and management experience.

Judge Quraishi's experience in handling complex pharmaceutical cases is also evident from his management of *United States ex rel. Penelow v. Janssen Prods., LP*, No. CV 12-7758, involving claims on behalf of the federal government, twenty-six states, and the District of Columbia, relating to illegal conduct in connection with the promotion of two HIV/AIDS drugs.[27] That litigation was re-assigned to Judge Quraishi on June 25, 2021 (Dkt. 261), who took immediate steps to move the litigation along. Judge Quraishi entered a 25-page summary judgment opinion December 21, 2021, addressing federal False Claims Act and Anti-Kickback Statute claims,[28] as well as a 49-page Rule 702 order on January 10, 2022, addressing Janssen's motions to exclude certain opinions from seven experts, and Relators' motions to exclude certain opinions from three

---

[26] *Judicial Center Welcomes Judge Zahid Quraishi as its 2022-2023 "First to the Bench" Speaker,* Fordham Law News (Nov. 29, 2022) https://news.law.fordham.edu/blog/2022/11/29/judicial-center-welcomes-judge-zahid-quraishi-as-its-2022-2023-first-to-the-bench-speaker/.
[27] *U.S. ex rel. Penelow v. Janssen Prods., LP*, 2025 WL 342079, at *1 (D.N.J. Jan. 30, 2025).
[28] *U.S. ex rel. Penelow v. Janssen Prods., LP*, 2021 WL 6052425 (D.N.J. Dec. 21, 2021).

experts.[29] Judge Quraishi ultimately presided over a 24-day trial in that litigation, and after ruling on post-trial motions, entered judgement March 28, 2025.[30]

Judge Quraishi's record demonstrates that he has the "expertise to efficiently manage this litigation." *In re: Roundup*, 214 F. Supp. 3d 1346, 1348 (J.P.M.L 2016).

## II. THE RELATED ACTIONS SHOULD NOT BE CONSOLIDATED INTO MDL NO. 3094

Consolidation of Plaintiffs' NAION claims into MDL No. 3094 will delay and prejudice NAION Plaintiffs, unnecessarily complicate the existing MDL, and overburden a Court already tasked with a complex and multifaceted combination of claims to resolve. Inclusion of these cases in MDL No. 3094 in the Eastern District of Pennsylvania will not promote the just and efficient conduct of the litigation or serve the convenience of the parties and witnesses. Here, the mechanism of harm, location of injury, and effects of the injuries are significantly different from that in MDL No. 3094. NAION occurs in the human eye and optic nerve, not in the gastrointestinal organs, which are the focus of the injuries in MDL No. 3094. Lilly's arguments in favor of consolidation before Judge Karen S. Marston rely in significant part on ignoring the significant substantive differences between the Related Actions and the gastrointestinal claims in MDL No. 3094, and eliding the distinction between Judge Marston's work to advance MDL No. 3094 and the work that would be needed to advance the Related Actions.

### a. The Differences Between NAION GLP-1 RA Claims and Gastrointestinal GLP-1 RA Claims Are Significant

The scientific inquiry relevant in MDL 3094 is starkly different from that necessary in the Related Actions, because the mechanism by which Novo's GLP-1RAs caused the injuries in MDL

---

[29] *U.S. ex rel. Penelow v. Janssen Prods., LP*, 2022 WL 94535, at *23 (D.N.J. Jan. 10, 2022).
[30] *U.S. ex rel. Penelow v. Janssen Prods., LP*, No. CV 12-7758, Dkt. 498 (March 28, 2025).

No. 3094 is distinct from the mechanism discussed in NAION Plaintiffs' complaints. In MDL No. 3094, plaintiffs allege that GLP-1RAs caused them to suffer "gastroparesis, ileus, intestinal obstruction or pseudo-obstruction, or other gastrointestinal injury." *See In re Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Prods. Liab. Litig.*, 717 F.Supp.3d 1370, 1373 (J.P.M.L. 2024). These injuries are alleged to share the same mechanism of causation: The impact of Novo's drugs on the movement of food through the digestive system, including delayed gastric emptying. In contrast, Plaintiffs' NAION injuries are not alleged to be caused by a delay in gastric emptying. As discussed above, the *JAMA* study referenced a potential causal mechanism, proposing that "expression of the GLP-1 receptor in the human optic nerve and GLP-1 RA induced enhanced sympathetic nervous system activity might influence optic nerve head perfusion and potentially increase the risk of NAION."[31]

The corporate custodial discovery and individual plaintiff discovery required to litigate Plaintiffs' NAION claims are also significantly different from that in MDL No. 3094: Apart from the regulatory file for the drugs at issue, essentially all discovery necessary to litigate Plaintiffs' NAION claims is distinct from that sought and obtained in MDL No. 3094. For example, the MedDRA terms used to identify adverse event reports of the gastrointestinal injuries in MDL No. 3094 have no relationship to the MedDRA terms needed to identify adverse event reports of NAION. Ms. Kane has therefore proposed a different set of MedDRA terms for the identification of NAION adverse event reports. Likewise, in *Kane*, Novo has produced materials relating to the Food and Drug Administration's safety inquiry into the relationship between GLP-1 RAs and NAION, material centrally relevant to Kane's claims and those of other NAION plaintiffs, but

---

[31] *See, e.g.*, *Kane v. Novo Nordisk, et al.* 24-cv-11384, Dkt. 1 at 20.

entirely irrelevant in MDL No. 3094. As another example, custodial document discovery (e.g., searches of employee emails and cellular phones) in MDL No. 3094 was guided by search terms that exclusively target the gastrointestinal injuries in that litigation, and do not target for collection or production any documents relating to Plaintiffs' NAION injuries. Ms. Kane and Novo have negotiated a process for identification, review, and production of custodial documents relevant to her claims that is fundamentally different from the search term approach used in MDL No. 3094. Consolidation would also not reduce the burden of defendant-employee depositions. Counsel in MDL No. 3094 has sought to develop testimony relating to Defendants' knowledge of the risks of gastrointestinal injuries, and the notice Defendants' provided (or neglected to provide) relating to such injuries, while counsel in the Related Actions would seek to develop facts relating to Defendants' knowledge of the risk of NAION, and these lines of questioning do not overlap.

Lilly points to a wide array of steps that Judge Marston has undertaken in connection with the gastrointestinal claims in MDL No. 3094, and suggests, without explanation, that those steps relate in any meaningful way to Plaintiffs' NAION claims. But those steps, while relevant to the gastrointestinal claims in MDL No. 3094, have no relation to Plaintiffs' NAION claims, and do nothing to advance those claims. For example, Lilly points to the Science Day that was held in MDL No. 3094, without acknowledging that the focus of those presentations was "the injuries alleged in this litigation (specifically, gastroparesis, ileus, intestinal obstruction, gallbladder disease and gallstones, severe gastrointestinal disease, deep vein thrombosis and the secondary condition of malnutrition); and the medical literature related to GLP-1 RAs and the alleged injuries," and the "labeling and regulatory history" as it relates to those injuries. *In rRe GLP-1 RAs Prods. Liab. Litig.*, MDL No. 3094, Dkt. 115 at 1. Likewise, Lilly suggests that Judge Marston's

order[32] on the appropriate methods for diagnosis of gastroparesis is relevant to consolidation of NAION Plaintiffs' claims – but that decision is grounded in an area of medicine completely untethered from any allegation in the Related Actions. Lilly also misconstrues the coordination order in the MDL, which, appropriately, guides coordination between Plaintiff Leadership in the MDL and gastrointestinal cases in state courts, and does not create or support coordination between the MDL and NAION cases in state courts. *In Re GLP-1 RAs Prods. Liab. Litig.*, MDL No. 3094, Dkt. 370 at 1 (order governs coordination only between MDL "plaintiffs who used GLP-1 RAs and suffered the injuries alleged in the operative Master Complaint" and actions "concerning these same injuries outside of the MDL Proceeding").

### b. Consolidation Into MDL No. 3094 Would Unnecessarily Complicate The MDL and Unnecessarily Delay NAION Plaintiffs' Cases

Because of the significant differences between the Related Actions and the claims in MDL No. 3094 described above, consolidation into MDL No. 3094 is inappropriate.

In the context of MDL No. 3094 itself, this Panel rejected the inclusion of claims from plaintiffs who allege deep vein thrombosis ("DVT") injuries because the "mechanism of harm" differed. *In re Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Prods. Liab. Litig.*, 766 F.Supp.3d 1328 (J.P.M.L. 2024). The Panel held that "[f]urther expansion of MDL No. 3094 to include claims for new types of injuries would significantly complicate the management" of the

---

[32] Lilly references only two substantive orders in MDL No. 3094 in support of its petition. One is the order described above, relating solely to expert opinions on methods of diagnosis of gastroparesis (Dkt. 467). The other is the Court's order on Defendants' Motion to Dismiss, evaluating the sufficiency of the Master Complaint in that litigation – a document which, by design, does not include any allegations relating to any Plaintiff suffering from NAION, the causal association between GLP-1 RAs and NAION, Defendants' representations and omissions relating to NAION, Defendants' lack of warnings relating to risk of NAION, or Defendants' awareness of that risk.

litigation. *Id.* at 1329 ("Indeed, an MDL that encompassed *any* potential injury relating to use of these exceedingly popular weight loss drugs might quickly become procedurally and substantively unwieldy."). This argument applies even more strongly to Plaintiffs' injuries, which are well beyond the scope of those injuries at issue in MDL No. 3094 and are likely to be more numerous.

The Panel has applied the same analysis in other contexts. The Panel vacated the transfer of a Plaintiff claiming "smoldering myeloma" into *In re Roundup Prods. Liab. Litig.*, which had focused on cancer injuries, because that transfer "would constitute an expansion of the litigation to non-cancerous conditions."[33] The Panel determined that adding "a new injury will only complicate pretrial proceedings," and observed that alternative mechanisms existed for minimizing duplicative discovery, including that "relevant discovery of [Defendants] obtained in the MDL can be made available" to the non-consolidated Plaintiffs. *Id.* Similarly, the Panel declined to include claims against McKinsey in MDL No. 2804, because although the "actions involve[d] common factual issues," adding unique factors "to an already exceedingly complex and contentious MDL may hinder the transferee judge's ability to efficiently manage the range of cases now before him."[34]

Existing MDL No. 3094 involves at least five distinct injuries: Gastroparesis, intestinal obstruction, ileus, gallbladder injury, and other gastrointestinal adverse events. NAION claims, if transferred to Judge Marston, would constitute a sixth injury, and NAION Plaintiffs would be prejudiced by being sixth in line for the Court's attention. As Judge Polster observed in connection with remand of cases in MDL No. 2804, "[w]hat the Court has learned is that, if it proceeds with

---

[33] October 5, 2020 Order, MDL No. 2741, Dkt. 2027, at 1.
[34] *In re McKinsey & Company, Inc., National Prescription Opiate Consultant Litigation*, 534 F. Supp. 3d 1377, 1379.

the bellwether trial process as it has so far, it will simply take too long to reach each **category** of plaintiff and defendant, much less each **individual** plaintiff and defendant." *In re Nat'l Prescription Opiate Litig.*, 2020 WL 582151, at *1 (U.S. Jud. Pan. Mult. Lit. Feb. 5, 2020) (emphasis in original) *quoting* Suggestion of Remand (Polster, J.).

The addition of NAION cases to MDL No. 3094 would dramatically complicate an already complex litigation. The gastrointestinal injuries MDL was consolidated in February 2024, and the schedule currently in place for that litigation called for a period of over two years to address threshold issues solely related to gastrointestinal injuries. *See* MDL No. 3094, Dkt. 368.[35] MDL No. 3094 already involves approximately 2,700 cases, alleging a variety of major gastrointestinal injuries (*e.g.*, gastroparesis, cyclical vomiting, intestinal obstruction, ileus, gallbladder injuries), each requiring fact-intensive inquiry as to, *e.g.*, the timing and nature of notice to different Defendants as to the risk of different injuries; the presence or absence of warnings for specific conditions at various times; FDA's approval or rejection of various warnings proposed by different Defendants at different times and for different injuries; and the actionability and falsehood of Defendants' different representations as to different risks. In excluding Farxiga, Jardiance, and other drugs from the *In re Invokana* MDL, the Panel sought to avoid "the possible need for separate discovery and motion tracks, as well as the need for additional bellwether trials." *In re Invokana (Canagliflozin) Prods. Liab. Litig.*, 223 F. Supp. 3d 1345, 1348 (U.S. Jud. Pan. Mult. Lit. 2016). This is not a mere risk in the context of the NAION claims: The Related Actions will certainly

---

[35] The prioritized issues in MDL No. 3094 include preemption briefing relating to Defendants' contentions that they proposed warnings for Plaintiffs' gastrointestinal injuries, and that the FDA rejected those warnings. In the Related Actions, Novo has not alleged that the FDA rejected a NAION warning, setting up a fundamentally different preemption analysis.

require separate discovery and motion tracks from the gastrointestinal claims in MDL No. 3094, as well as a completely separate Bellwether process.[36]

The management of the constellation of gastrointestinal injuries and defendants currently underway in MDL No. 3094 is only tenable because those injuries relate to the same organ system and mechanism of action, and therefore involve largely overlapping discovery. Counsel expects there will be hundreds and possibly thousands of NAION claims filed, a significant additional burden on its own. Consolidation of those claims into MDL No. 3094 would also require that Court to coordinate with the sizeable and growing New Jersey State Court NAION litigation, which now involves 32 plaintiffs. Attempting to fold in the many additional layers of fact inquiry required for analysis of an entirely different injury would make efficient management of that MDL untenable.

Lilly's petition "has not demonstrated that the potential efficiency and convenience benefits of adding claims for [new] injuries to this MDL outweigh the increased managerial complexity that the addition of such claims is likely to create." 766 F. Supp. 3d 1328, 1329 (J.P.M.L. 2024). A differing mechanism of harm, location of injury, and effects of the injuries works against any shared common factual and legal issues across the cases; and the difference in procedural posture across these cases adds further weight against adding NAION cases to MDL No. 3094. Consolidation of NAION claims into MDL No. 3094, would yield precisely the "procedurally and

---

[36] Lilly in its petition argues that two "combination-case plaintiffs," who allege both gastrointestinal injuries and NAION, would create "judicial inefficiencies" if the NAION cases are not consolidated with MDL No. 3094. Lilly Petition, Dkt. 1-1, Aug. 19, 2025, at 14. As discussed herein, however, the radically different factual inquiries these different claims require would starkly limit any potential overlap in discovery or motion practice across NAION and gastrointestinal injuries. Moreover, counsel believes that such claims will be few and rare. Whatever benefits Lilly believes consolidation may yield in the combination cases can be achieved through informal coordination.

substantively unwieldy" litigation the Panel sought to avoid in its analysis of DVT claimants. 766 F. Supp. 3d 1328, 1329 (J.P.M.L. 2024).

<u>**CONCLUSION**</u>

For all the reasons herein, Plaintiffs Cynthia Kane et al. respectfully request that the Panel order consolidated pretrial proceedings for the Related Actions and transfer all pending and future actions alleging GLP-1 RA-associated NAION to the District of New Jersey. Plaintiffs further request an opportunity to be heard at oral argument on this issue.

Dated: September 12, 2025

Respectfully submitted,

By: /s/ *Christopher A. Seeger*

Christopher A. Seeger
Parvin K. Aminolroaya
Max Kelly
SEEGER WEISS LLP
55 Challenger Rd., 6th Floor
Ridgefield Park, NJ 07660
Phone: (973) 639-9100
cseeger@seegerweiss.com
paminolroaya@seegerweiss.com
mkelly@seegerweiss.com

*Attorneys for Plaintiffs Cynthia Kane, Elizabeth Pennell, Kirk Osterman, Jeanne Shea, Margaret Malvesti, Gerald Lamana, Geoffrey Symonds, Christy Martin, Andrew Braddock, Arthur Brinson, Michael Curtis, Nancy Hershman, Donald Humble, and Jacqueline Minix*